**TITLE GUARANTEE & TRUST CO., Appellee, v WILBY et, Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6624. Decided May 20, 1946.

Curt E. Stern and Conrad Magrish, Cincinnati, for appellee.

Clark Wilby, Cincinnati, and Mitchell Wilby, Cincinnati, for appellants.

## OPINION

By MATTHEWS, J.

In 1906, the plaintiff was made a trustee of certain real estate under a trust agreement for the benefit of certain named creditors of Hiram B. Mathers. Its duties were to hold the legal title, to place all the real estate upon the market, to lend its assistance in making sales, to receive and handle all proceeds of sales, but the parties constituted Hiram M. Mathers, the sole selling agent, without compensation, with power to determine whether sales should be public or private, and all the other terms including the price. After a sale had been made by him it was his duty to report the fact to the trustee that would then execute and deliver a deed upon payment of the purchase price. There was a provision that if

110

Mathers failed to realize a net amount of $3,000.00 in any year, the trustee was given full power and authority to sell and convey any unsold portion for the best cash price obtainable and to have the right to act solely in that behalf as it may deem best; and from then on Mathers would have no authority. Upon payment of all other beneficiaries the residue, if any, was payable to Anna B. Mathers as the ultimate beneficiary.

In 1921 the plaintiff filed suit to be relieved of this trust, but, on the request of the beneficiaries that the plaintiff continue to act as trustee, the suit was dismissed and a new agreement entered into in 1922. All the acts of the trustee were approved to the date of the 1922 agreement and the corpus of the trust described and agreed to. There was no substantial change in the duties of the trustee, but it was agreed that if Mathers should become incapacitated the beneficiaries and the trustee should have the right to choose his successor. They were also given the right to terminate his authority and choose his successor for any cause.

There was a provision for compensation to the trustee of $15.00 per month and other provisions not necessary to mention here. The agreement was described as a modification of the original agreement and as between the parties signing it was to take the place of the original.

The primary relief sought by the present action is to secure the approval of the resignation of the trustee, and of the accounting which it made in its petition showing its acts and proceedings as trustee and the remaining trust assets in its name.

These appellants-defendants filed an answer admitting the creation and existence of the trust and certain details unimportant now, and then denied all other allegations. This was followed by a statement that they ought to be informed by the plaintiff of the exact amount due to them on their claims against the trust fund and what assets remain and "what is the present fair value of the trust estate." They also said the court should inquire and determine whether a certain claim against Gilman, mentioned in the petition, should be settled on the basis recommended by the trustee and also should inquire as to whether the trustee had performed all its duties.

(1) The transcript shows that this cause came on to be heard on the pleadings on February 2nd, 1945, and that "The Court having heard the testimony adduced and the argument of counsel, said cause was submitted to the court for decision." Nothwithstanding this recital, the appellants assert that what

took place at that time was so lacking in all the attributes of a trial that the judgment based thereon deprives them of the due process of law guaranteed to them by **Sec. 16** of **Article I** of the **Ohio Constitution** and the XIV Amendment of the United States Constitution. As this contention challenges the validity of the judgment appealed from as a judgment, we will consider it before taking up the assertions of errors in the exercise of lawful jurisdiction.

Now what does the record show as to what took place at the time the docket recites that this cause was heard and submitted?

In the narrative bill of exceptions it is recited that "at the trial of this cause——the following proceedings were had upon the issues joined" and then is a recital of the presence of attorneys representing the plaintiff and these appellants and an attorney representing the debtor Gilman. This is followed by a narration by Mr. Magrish, attorney for the plaintiff of what he expected the evidence to prove and then a statement by Mr. Clark Wilby and by Mr. Mitchell Wilby of what they expected the evidence to show and what they thought the Court should require of the plaintiff.

The bill of exceptions then continues as follows: "Thereupon counsel for plaintiff handed up to the court the Instrument of Trust dated February 29th, 1923,——and stated to the Court that "said document is the Trust Agreement ——. The same having been admitted in evidence is now marked plaintiff's Exhibit 'A' and is hereto attached and made part of this Bill of Exceptions."

Thereupon plaintiff's counsel asked the appellants to produce a photostatic copy of 14 pages from plaintiff's books which counsel did explaining that plaintiff's counsel had given them to him on July 2nd, 1943, and that the first 9 pages were titled "Anna B. Mathers' Trust Account," the next 2 "Anna B. Mathers" and the last 3 "Control Account Anna B. Mathers." The bill of exceptions then recites that "Counsel for plaintiff handed up to the Court these said fourteen (14) pages and states to the Court that they show everything in plaintiff's books pertaining to this trust. The said photostats, having been admitted in evidence, are now marked as plaintiff's Exhibit B."

The bill of exceptions then shows that the appellants' counsel produced a plat as requested by plaintiff's counsel and "Thereupon attorney for plaintiff handed up to the Court said photostat plat and stated to the Court that it is a plat of the said trust property and that the part within the said

heavy white lines which is the remaining property consists of a partly filled ravine with no access to any made street and is of small value. The said photostat plat having been submitted in evidence is now marked plaintiff's Exhibit C."

"Thereupon the Court stated that the matter would be taken under advisement."

The record shows that on July 12th, 1945—more than five months thereafter—a judgment entry was presented to the trial Judge bearing the endorsement of appellants' attorney. This judgment entry, reserving the general exception of the appellants was entered on the journal on that day.

Within three days thereafter the appellants filed a motion for a new trial on the grounds that the judgment was contrary to law, not sustained by sufficient evidence, against manifest weight of the evidence, and "Because of irregularity in the proceedings of the court and because of an abuse of discretion by the court" preventing a fair trial and denying to them due process of law. As a part of this motion and in support of it there is an affidavit of appellants' counsel in which he purports to portray what took place at the hearing on February 2nd, 1945, concluding "And thereupon counsel for plaintiff rested his case and affiant also rested."

It will be observed that during the entire hearing on February 2nd, 1945, there was not a single objection or exception to the manner in which the proceedings were conducted. It will be also noted that although the judgment entry bears the endorsement showing that it had been submitted to appellants' counsel, at no place in the record is there any intimation that then or at any time previously had he requested the Court to be permitted to introduce any additional evidence, or that he considered the trial still in progress, but on the contrary, his affidavit of July 13th, 1945, filed with the motion for a new trial, recites that both sides had rested after the introduction of the evidence.

However, the appellants' counsel contends in this Court that this record shows that no trial took place and points particularly to the fact that the record does not show the administering of the oath to any witness, as support for his contention.

From what we have said we think it clear that a trial did take place and that all parties so understood it and that the cause had been finally submitted, and that not only a trial

in fact but also in law did take place, unless the fact that no oath was administered defeats the common understanding of all. Disregarding the informality it is clear that evidential matter was presented to the Court. Does the omission of the oath invalidate all this notwithstanding the failure of the appellants to object to the informality? There is no doubt that adherence to established forms of procedure is desirable as tending to clarity and avoidance of objection later, but can a litigant who has participated in such disregard of form and taken his chance at a favorable ending object later to the method of procedure when he is disappointed in the result? That is the question here.

We repeat that the appellants made no objection and took no exception whatsoever at this trial. In 2 O. Jur. 207 and 208, it is stated that:

"It is a well-settled rule that one cannot urge for the first time in a reviewing court objections which could have been obviated if they had been made below. This result is based largely upon a kind of estoppel, since a party who fails to raise an objection in the lower court which might have been there corrected should not be allowed to wait until the case comes before the reviewing court."

There is no dispute as to the genuineness of the trust agreement which was introduced and as to the photostatic copy of the book account relating to this trust and the photostat plat. It seems to us that as to the method pursued as to them, the appellants did more than merely refraining from objecting. They actively participated in the method pursued. It is a general rule that one who has by his conduct induced the Court to pursue a certain course, cannot later object, even though the course did not conform to the law. In 2 O. Jur. 640, it is said:

"A plaintiff in error cannot attack a judgment for errors committed by himself, nor for errors which he induced the court to commit or into which he either intentionally or unintentionally misled the court and for which he is actively responsible."

These general rules that prevent an appellant from taking advantage of errors which he invited or to which he did not

object at the time preclude the appellants from questioning the course pursued by the trial court, unless the failure to administer an oath to a witness is a condition precedent to the receipt of testimony which it is not within the power of the parties to waive.

It is stated in **42 O. Jur. 298,** that: "A stipulation by parties as to what certain witnesses would testify cannot properly be received in lieu of their testimony," and **Hocking Valley R. Co. v Helber, 91 Oh St 231,** is given as the supporting authority. A reference to that case will disclose that the subject is not mentioned in the syllabus, and while a stipulation is mentioned in the opinion at **page 245,** no such ruling was made. And, of course, it is familiar practice for lawyers in a case to stipulate as to what a witness, if called, would say, and thus dispense with the presence of the witness altogether.

This subject of failure to administer an oath to a witness is discussed in 28 R. C. L., 585. The cases seem to fall into two classes — one where the objecting party supposed the oath had been administered and the other where the objecting party knew at the time that the oath had not been taken and made no objection then. As to this latter class it is said: "Where, however, a witness is permitted to testify without having been previously sworn, and that fact is known at the time, the defect must be taken advantage of at once, and a failure to do so is such acquiescence in the testimony as will preclude objection after verdict."

This question was presented in the case of State of Missouri v. Hope, — Mo., — , 8 L. R. A. 608, where a witness for the State testified, without objection, without being sworn. The Court at 612 of the latter report discussed this subject, saying:

"The next assigned error rests on the claim that a witness testified on behalf of the State at the trial without having first been sworn. No objection on this ground was made at the hearing. It appears for the first time in the motion for a new trial, and nothing in the record shows when the fact was discovered by defendant or his counsel. Had the point been suggested when the witness began his statement or during his examination, the irregularity or oversight of permitting him to testify, unsworn (if it existed), could have been easily and promptly rectified. But it was not suggested. After the witness had been examined in chief he was fully cross-examined on the part of defendant. Thus

was he treated by both parties as in all respects fully qualified to testify. It has been held by other courts, as well as our own, that where an oath is requisite to qualify a person as a trier of the facts or of law, it may be waived by the competent parties in interest, either expressly (Howard v Sexton, 4 N. Y. 157; Tucker v Allen, 47 Mo. 488; Grant v Holmes, 75 Mo. 109), or by going forward in the matter without inquiry or objection. Arnold v. Arnold, 20 Iowa, 275; Merrill v St. Louis, 83 Mo. 244; Cochran v Bartle, 91 Mo. 636, 8 West Rep. 707."

See, also: Associate Employers v. Industrial Com., 88 Okla., 249 at 251; State v. Williams, 49 W. Va. 220 at 222; Ogden v. State, (Tex.) 58 S. W. 1018 at 1021.

We conclude that the objection that a trial did not take place is not sustained by the record and that as the appellants not only failed to object at the time, but actively took part in the proceedings as conducted, they are not in a position to object to the informality on this appeal.

(2) It is urged that as the burden rested upon the plaintiff it was not incumbent upon the appellants to do more than to insist that it make a complete disclosure and accounting. There is no doubt that a trustee is under a duty to keep an account of his receipts and disbursements, and to render an accounting to the beneficiaries (Restatement of Law of Trusts, section 172), but an examination of the photostatic exhibit shows that this duty was meticulously performed. It bears every evidence of having been kept in the usual course and in fact there was no objection to it on the ground that it was not so kept or on any other ground. Every item is described by indicating the source of the income and the purpose of the expenditure. The money remaining is set forth and there is no dispute whatever as to the unsold real estate which is specifically described in the petition and shown on the plat that was introduced in evidence, and appellants have verified it by recourse to the public records. No request was made at the trial for an inspection of vouchers or receipts. As a matter of fact as the items consisted of money received from the selling agents designated by the beneficiaries, payments to the beneficiaries, and taxes, and to itself for agreed compensation, there could hardly be a doubt raised concerning the correctness of any of them. Proof by production of vouchers is not indispensable. Villa Site Co. v. Copeland, 13 A. L. R. (N. J.) 356.

While the burden of proof rested upon the plaintiff, by this showing it had presented a prima facie case, and the burden of going forward and producing some evidence by cross-examination or otherwise falsifying or surcharging the account rested upon the appellants.

(3) The record shows that the appellants made certain specific requests at the trial and one was that the plaintiff be required to continue as trustee, thereby implying that it was a suitable trustee which could hardly be regarded as consistent with any claim of dereliction. But the appellants had no absolute right to insist that the plaintiff continue as trustee. The Court had discretion to determine that question, which it did by accepting the plaintiff's resignation. Restatement of Law of Trusts, section 106.

(4) Another specific request made by appellants at the trial was the Court fix the compensation of the plaintiff as trustee. But the amount of compensation was fixed by the trust instrument. It is not a case of determining the reasonableness of compensation. It is said, however, that the trutee should have taken steps to terminate the trust sooner and that its failure to do so resulted in monthly compensation accruing without any advantage to the beneficiaries. But here again the duration of the trust is definitely fixed by the trust instrument. It is to endure until all claims have been paid, and only then is the trustee to convey the remaining real estate, if any, to Anna B. Mathers, her heirs or assigns. The trustee could not and cannot terminate the trust. It requires a court decree even to change the trustee.

Nor can it be said that the trustee, in violation of its duty, prolonged the duration of the trust by lack of diligence in effecting sales because the trust instrument imposed the active primary duty of effecting sales upon an appointee of the beneficiaries, other than the plaintiff.

(5) Complaint is made that the trustee has allowed the taxes to become delinquent. The total amount of the taxes and assessments is $350.00 and there is no evidence as to the penalty resulting from delinquency. If the plaintiff failed in its duty in not paying the taxes, it could only be charged with the damage resulting, that is, the amount of the penalty. And as the plaintiff waived a part of its fee for services in a sum more than twice the entire tax claim, it is apparent that the appellants have suffered no prejudice or loss.

(6) It is urged that the Court should not have authorized the settlement of the claim against Gilman for less than its total. We are of the opinion that that rested in the sound dis-

cretion of the trial court, and that there was no abuse of discretion.

For these reasons, the judgment is affirmed.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur in syllabus, opinion & judgment.