SELEVAN, Appellant,

v.

SELEVAN, Appellee.

[Cite as *Selevan v. Selevan*, 183 Ohio App.3d 544, 2009-Ohio-3877.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080100.

Decided Aug. 7, 2009.

Michael B. Ganson Co., L.P.A., and Michael B. Ganson, for appellant.

Philip E. Pitzer, for appellee.

Per Curiam.

{¶ 1} Plaintiff-appellant, Leah Selevan, the beneficiary of an irrevocable inter-vivos trust administered by her uncle, defendant-appellee, Lawrence Selevan, appeals from the judgment of the Hamilton County Common Pleas Court awarding her $15,000 and "the amount of money equal to all taxes and penalties due to the I.R.S." She raises two assignments of error for our review.

## I.  *Factual and Procedural Background*

{¶ 2} On March 20, 1984, Leah's father, Daniel Selevan, established an irrevocable intervivos trust for Leah and her sister, Michelle Selevan.  Michelle is not a party to this lawsuit.  Leah was two years old at the time the trust was

created. The trust agreement provided that Lawrence, as the trustee, was to manage the trust until Leah reached the age of 21. At that time, the trust was to terminate, and Lawrence was to make a final distribution to her. Between 1984 and May 25, 1999, the trust's assets consisted of a 15–year certificate of deposit ("CD") and 20 shares of Consolidated Stores stock.

{¶ 3} In April 1999, Daniel Selevan died. On May 25, 1999, Leah, who was 17 years old at the time, accompanied Lawrence to the bank. Lawrence tendered the fully matured CD to the bank and took sole possession of the check issued by the bank, which, according to bank records, was for $72,983.39.

{¶ 4} According to Lawrence, he took the money from the matured CD and put it into a money-market account for treasury securities at Fifth Third Bank. Lawrence, however, maintained that there was only $71,241 in the account as a result of the CD proceeds. He then made a number of disbursements to Leah from the account while she still lived in Cincinnati.

{¶ 5} In April 2000, he opened an account with Morgan Stanley in New York, where he lived, to generate enough money for Leah to attend film school in New York City. Lawrence invested $50,000 of the trust in the equity market by using a "hedge fund strategy." He later transferred another $5,000 to the Morgan Stanley account. He testified that to derive the most income from the trust's assets in the stock market, he would advance money to Leah from a business he owned and would later reimburse those advances with funds from her trust. He testified that by August 2000, he had increased the trust's corpus to $80,000. In November 2000, however, he lost all the trust's assets in the dot-com collapse of the stock market.

{¶ 6} Lawrence testified that in December 2000, he told Leah that he had lost all the money, which was approximately $60,000, in the stock market crash. Lawrence further testified that after December 2001, he had given Leah approximately $48,000 of his own money so that she could finish film school. But the only evidence of these payments was two checks totaling $1,601. The checks were written from a bank account for Asian American Capital Partners, a company Lawrence solely owned. In June 2001, Leah graduated from film school and returned to Cincinnati. When Leah turned 21 on May 30, 2002, she did not receive a complete accounting of the trust or a final distribution of the trust's assets.

{¶ 7} On October 14, 2004, Leah filed suit against Lawrence. Leah contended that Lawrence, as trustee, had failed to provide an adequate accounting of the trust, had failed to provide a final distribution of the trust assets, and had breached various fiduciary duties in his handling of the trust, including the duty to properly invest and account for the trust assets, the duty to file all applicable tax returns for the trust, and the duty to keep the trust assets separate from his

own personal property. Leah also alleged that Lawrence had converted the trust assets for his own personal use.

{¶ 8} Leah asked the trial court to order Lawrence to (1) render a full, complete, and accurate accounting of the trust assets on the final settlement of the trust; (2) distribute any remaining trust assets on the final settlement of the account; and (3) award her compensatory damages for Lawrence's breach of his fiduciary duties, as well as punitive damages, costs, and reasonable attorney fees.

{¶ 9} During the trial, Leah submitted the passbook and account statements for the 15–year CD, two faxed letters concerning the Consolidated Stores stock that was part of the trust, and three spreadsheets that Lawrence had produced during discovery. Lawrence claimed that these spreadsheets detailed all the money he had received as trustee and had disbursed to Leah. Lawrence also produced a packet of documents from Morgan Stanley related to trades he had made in the stock market with trust assets. But with the exception of two cancelled checks written to Leah from the bank account of a business Lawrence owned and a receipt for a $3,600 rent payment made on Leah's behalf that was not dated, none of the amounts listed on the spreadsheets were supported by any documentation. During her testimony, Leah acknowledged receiving $24,928 from the trust, but denied or had no recollection of receiving another $11,765 that Lawrence had listed as disbursements to her on the spreadsheets. Lawrence admitted during his testimony that he had failed to file any tax returns on behalf of the trust.

{¶ 10} Both Lawrence and Leah presented expert testimony from certified public accountants. Leah's expert, Robert Sicking, testified that Lawrence had failed to prudently invest the trust's assets and had failed to file state and federal tax returns. Sicking testified that had Lawrence invested just the $72,983.39 paid by the bank in accordance with the prudent-investor rule, the value of the trust corpus available to Leah as of the date of the trial, after deductions for disbursements Leah acknowledged to have occurred, would have been $56,416.42. Sicking could not determine, however, the exact amount of tax liability or whether Lawrence had converted any of the funds for his personal use, because of Lawrence's failure to properly account for the trust funds. But he estimated that all taxes owed were in excess of $12,000, not including interest and the probable penalties for Lawrence's failure to file and pay in a timely manner.

{¶ 11} Lawrence's expert, Nicholas Shipley, agreed that it was Lawrence's responsibility as trustee to file all state and federal tax returns for the trust; that Lawrence had failed to file any of these returns; and that as a result, the trust would incur substantial interest and penalties. He testified that based upon his calculations, the federal taxes owed were approximately $13,000, the state taxes owed were in excess of $500, and the interest and penalties owed were another

$10,000 to $13,000. He testified, however, that he would probably be able to abate some of the tax penalties.

{¶ 12} At the conclusion of the trial, the court ruled in favor of Leah, awarding her $15,000 and "the amount of money equal to all taxes and penalties due to the I.R.S." Leah subsequently filed a request for findings of fact and conclusions of law. In its findings of fact and conclusions of law, the trial court found that the trust was started with $10,000 and that in February 1999, it had grown to $69,241.78. The court further found that "[d]ue in part to this mild success, the trustee became more aggressive with his investing strategy, attempting to fulfill his niece's lofty goals and dreams. However, this aggressive strategy failed and the trust was depleted. Yet the defendant continued to give the niece money to cover her costs." The court then approximated the amount of disbursements from the trust at $40,000. The court further found that the approximate amount of disbursements that should have been made and accounted for was $55,000, which left a difference of $15,000.

## II. Analysis

{¶ 13} In her first assignment of error, Leah argues that the trial court erred as a matter of law in its award of relief in the judgment entry. She raises a number of issues for our determination.

{¶ 14} Leah first argues that the trial court failed to address the propriety of Lawrence's accounting of the trust funds in its findings of fact and conclusions of law and failed to order him to provide her with a complete accounting of the trust funds. Lawrence does not dispute that Leah is entitled to an accounting. Instead, he maintains that he has provided an adequate accounting and that the trial court's judgment is supported by the weight of the evidence. We disagree.

{¶ 15} To ascertain the amount of damages, if any, suffered by Leah, the trial court and Leah must have a full and complete accounting of Lawrence's administration of the trust.[1] The trial court cannot approximate the amount of disbursements made to Leah or the amount of damages she sustained. Furthermore, the trial court failed to address the shares of Consolidated Stores stock, which were a part of the trust, in its findings of fact and conclusions of law and in its judgment entry. Consequently, we find that Leah's first issue has merit.

---

1. See *Teegardin v. Teegardin* (Mar. 3, 1998), 10th Dist. No. 97APE08–982, 1998 WL 97261; *Title Guar. & Trust Co. v. Wilby* (1946), 78 Ohio App. 183, 191–192, 33 O.O. 515, 69 N.E.2d 429.

{¶ 16} Leah next argues that the trial court failed to address her claim that Lawrence had breached his fiduciary duty to properly invest the trust funds. We agree.

{¶ 17} Leah maintained in her complaint that Lawrence had violated R.C. Chapters 1339 and 1340. Yet at trial and in her appellate brief, she argued that Lawrence had violated the "60–percent" rule set forth in R.C. 2109.371 and 2109.372. Those provisions, however, apply only to fiduciaries appointed by the probate court.[2] As the trustee of an intervivos trust, Lawrence's investing authority was governed by R.C. Chapter 1339.

{¶ 18} In its decision, the trial court did not address Lawrence's conduct in the context of the language of the trust or R.C. Chapter 1339. Rather, it stated only that Lawrence had engaged in an "aggressive investing strategy." But this was not an analysis guided by the correct standard. As a result, the trial court must evaluate Leah's fiduciary claims in light of the language of the trust and R.C. Chapter 1339, once a proper accounting has been completed.

{¶ 19} Leah also argues that the trial court's award failed to properly address Lawrence's failure to file the requisite state and federal tax returns. We agree.

{¶ 20} During the trial, Leah presented testimony from Robert Sicking that it was Lawrence's responsibility as the trustee to file any tax returns for the trust. Lawrence and his accountant, Nicholas Shipley, agreed that it was Lawrence's responsibility as trustee to file all state and federal tax returns for the trust; that Lawrence had failed to file any of these tax returns; and that, as a result, the trust would incur substantial interest and penalties. Yet in its judgment entry, the trial court addressed only federal taxes, penalties, and interest that would be due. It did not address any state taxes that would be owed. The trial court, moreover, erred to the extent that it ordered Lawrence to pay Leah the amount of money owed by the trust for any federal taxes, penalties, and interest, when it was undisputed that it was Lawrence's responsibility as trustee to file the returns with the appropriate taxing authorities and to take care of any penalties or interest due.

{¶ 21} Leah finally argues that Lawrence breached his fiduciary duty by converting trust funds for his own personal use. The trial court, however, did not address this claim. As a result, the trial court must decide the merits of this claim on remand, once a proper accounting has been completed.

{¶ 22} As a result of the foregoing analysis, we sustain Leah's first assignment of error and remand this case to the trial court for an accounting. Once the

---

**2.** See R.C. 2109.01.

accounting is completed, the trial court must then determine which, if any, fiduciary duties were breached by Lawrence. The trial court should then decide, if appropriate, what, if any, damages were incurred because of these breaches.

{¶ 23} In her second assignment of error, Leah argues that the trial court's damage award was inadequate. Our disposition of her first assignment of error, however, has rendered moot this assignment of error.[3] We therefore reverse the trial court's judgment and remand this case for further proceedings consistent with this decision and the law.

Judgment reversed<br>and cause remanded.

SUNDERMANN, P.J., and HILDEBRANDT and DINKELACKER, JJ., concur.